

**SO ORDERED: November 06, 2008.**

_____
**Anthony J. Metz III**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
|    RODNEY LEE PUGH AND | ) | |
|    CONNIE ELAINE PUGH, | ) | |
| | ) | Case No.   07-662-AJM-7A |
|    Debtors, | ) | |
| _____ | ) | |
| RICHARD BARTLETT, | ) | |
| | ) | |
|    Plaintiff | ) | |
| vs. | ) | |
| | ) | Adversary Proceeding 07-50344 |
| RODNEY LEE PUGH & CONNIE ELAINE PUGH, | ) | |
| | ) | |
|    Defendants | ) | |
| _____ | ) | |
| RODNEY LEE PUGH & CONNIE ELAINE PUGH, | ) | |
| | ) | |
|    THIRD-PARTY PLAINTIFFS | ) | |
| | ) | |
| vs. | ) | |
| | ) | |

1

ROBIN HAUN AND WILLIAMS AND          )
ASSOCIATES,                          )
                                     )
          THIRD-PARTY DEFENDANTS     )
                                     )
_____ )
                                     )
ROBIN HAUN AND WILLIAMS AND          )
ASSOCIATES,                          )
                                     )
          THIRD-PARTY COUNTERCLAIM   )
               PLAINTIFFS            )
                                     )
vs.                                  )
                                     )
RODNEY LEE PUGH & CONNIE ELAINE PUGH, )
          THIRD-PARTY COUNTERCLAIM   )
          DEFENDANTS                 )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## AND SUMMARY JUDGMENT

This cause having come before the court on October 8, 2008 upon the Motion for

Summary Judgment filed by the Third Party Defendants, Robin Haun and Williams and

Associates. The Court, having considered the arguments of counsel, the pleadings, and the

memoranda and affidavits submitted by the parties, now makes the following findings of fact and

conclusions of law:

## FINDINGS OF FACT

1.   The dispute at issue in this proceeding arises from the July, 2005 sale of a 3.822 acre

     parcel of property located at 3103 W. County Road 1385 North, Rosedale, Indiana 47874

     (the "Property").

2.   Prior to April, 1999, the Property was part of a larger 63 acre tract (the "Master Tract")

     owned by John and Inez Dellacca (the "Dellaccas"). On April 5, 1999, the Dellaccas

carved out the Property from the Master Tract and conveyed it to Virginia and Larry

Walden (the "Waldens").

3.     Rodney Pugh purchased the Property from the Waldens on December 30, 2003.

Apparently, Pugh was under the impression that the Property included a wood frame barn

which was located on the west side of the Property. A March 8, 2004 survey of the

Property revealed that the west property line was located approximately fifteen (15) feet

further east than originally thought, and that it cut through the wood frame barn. Thus,

this survey indicated that a portion of the barn encroached upon the neighboring parcel

not owned by Pugh.

4.     On March 26, 2004, Virginia Walden paid to Rodney Pugh the sum of $5,000.00 and in

return Rodney executed a general release of all claim he might have had against Walden,

including but not limited to "the fact that certain improvements were thought by the

Parties to be situated upon the [Property], when in fact not all of said improvements were

located upon the [Property]".

5.     By January, 2005, Rodney Pugh and Connie Pugh (the "Pughs") desired to sell the

Property which, by this time, was owned by both of them. On January 20, 2005, the

Pughs entered into a Listing Contract and listed the Property with Robin Haun ("Haun")

who was a real estate broker and an employee of Williams and Associates ("Williams").

6.     The Listing Contract stated, in part:

(F)     INFORMATION REGARDING PROPERTY. Seller acknowledges that the
information on the Listing Profile Sheet and seller's Residential Real Estate Disclosure
Form (if applicable) is true and correct. . . .The Seller(s) or authorized agent(s) agree to
indemnify, actively defend and hold Broker, Company and its agents harmless from any
damages, loss, liability and expenses including attorney fees and costs, arising from

incorrect information or failure to supply material information regarding the Property, including, but not limited to the . . . location of property lines . .

7.    The Pughs also entered into an Agency Relationships and Authorization agreement with Haun, in which the Pughs gave "informed consent voluntarily to limited agency" and waived "any claims, damages, losses, expenses, including attorneys' fees and costs, against Licensee(s) arising from Licensee's (s') role of limited agent(s)."

8.    The Pughs also executed the Seller's Residential Real Estate Sales Disclosure Form (the "Disclosure Form").  The Disclosure Form stated, in part, "Seller states that the information contained in the Disclosure is correct to the best of Seller's CURRENT ACTUAL KNOWLEDGE as of the above date. . . .  The representations in this form are the representations of the owner and are not the representations of the agent, if any."  The Disclosure Form asked "Are there any encroachments?"  In response, the box marked "NO" was checked.

9.    At no time did the Pughs amend their Disclosure Form to include the information about the barn's encroachment revealed by the 2004 survey.

10.   Sometime after these documents were executed, the Pughs showed Haun the property. During this showing, Connie Pugh told Haun that the overhang on the back of the barn roof might encroach on the neighbor's property and might therefore need to be removed.

11.   Subsequently through Haun's efforts, Bartlett offered to purchase the Property. Haun conveyed to Bartlett the information Connie Pugh had given Haun about the possibility that the barn's overhang constituted an encroachment, as well as the fact that a survey had been done but that Haun had not seen it or been given a copy.

4

12. The sale of the Property to Bartlett closed on July 22, 2005.  Prior to closing, both Haun and Bartlett requested a copy of the survey from the Pughs, but neither party received one until after the closing.

13. The approximate 58 acres remaining of the Master Tract were conveyed to Jay and Kelly Swearingen (hereinafter "the Swearingens") on September 12, 2005, less than two months after the sale of the Property to Bartlett.  The Swearingens on January 8, 2007, sued Bartlett in the Clay Circuit Court for trepass and for removal of the barn which encroached on their property (the "State Court Action").

14. Bartlett as third party plaintiff, in turn, on March 1, 2007, sued the Pughs in the State Court Action for damages and to reform the deed .

15. The Pughs filed their voluntary petition for relief under chapter  7 of the Bankruptcy Code on January 31, 2007, prior to when they were sued as third party defendants in the State Court Action.

16. As a result of the Pughs' bankruptcy filing, an Order Staying Proceedings as to the Pughs was entered in the State Court Action on April 27, 2007.

17  Bartlett commenced this adversary proceeding by filing his Complaint Objecting to Dischargeability of Particular Debt against the Pughs on April 30, 2007.  The complaint alleges that Bartlett has suffered damages as a result of the State Court Action having been brought against him, and that such damages are nondischargeable under 11 U.S.C. §523 (a)(2) and (4) based on Pughs' alleged misrepresentation of the Property's description.

18. On October 23, 2007, the Pughs filed a third-party complaint against Haun and Williams

in this adversary proceeding, alleging that Haun and Williams were aware of the encroachment and that any false statements made to Bartlett with respect to the Property were made by Haun and Williams.

19.     On January 22, 2008, Haun and Williams filed a counterclaim for breach of contract against the Pughs, seeking indemnification and damages.

20.     The Pughs, as Defendants, moved for summary judgment on Bartlett's nondischargeability claim.  That motion for summary judgment was heard also on October 8, 2008 and was denied on October 10, 2008.

21.     Haun and Williams, as Third Party Defendants, moved for summary judgment against the Pughs, alleging that the Pughs' claim against them was barred by the statute of limitations and that the Pughs, by the real estate documents, agreed to indemnify Haun and Williams.

## CONCLUSIONS OF LAW

1.      This court has jurisdiction of the parties and the subject matter of this action.

2.      All findings of fact are incorporated by reference as conclusions of law, and all conclusions of law are incorporated by reference as findings of fact.

3.      Although Bartlett, the Plaintiff in this adversary proceeding, seeks a finding of nondischargeabilty against the Pughs, Haun and Williams as third party plaintiffs deny any liability to the Pughs should the Pughs be found liable to Bartlett.

### *Statute of Limitations*

4.      Haun and Williams contend that the claims against them contained in the Pughs'  third party complaint are barred by the statute of limitations.

5.      The Pughs' Third-Party Complaint purports to state a cause of action for "misrepresentation, false statement, or actual fraud". Paragraph 8 of the Third-Party Complaint alleges that the Pughs "offered to provide Williams with a copy of said survey, but Williams declined.   Paragraphs 9 and 10 of the Third-Party Complaint allege that the Pughs asked Haun "if they should remove the portion of the barn that potentially encroached on the west property line," and that Haun "advised against removing a portion of the barn". Paragraph 12 of the Third-Party Complaint alleges that Haun "developed the real estate listing and all of the information thereon". Paragraphs 13 and 14 of the Third-Party Complaint allege that Haun took Bartlett to the property, described the property to him, and was "aware of a potential encroachment issue on the west side of the property". Paragraphs 15 and 16 of the Third-Party Complaint state allegations for "any misrepresentation, false statement or actual fraud," but neither paragraph states any substantive allegation that differs from those made in Paragraphs 8-14.

6.      Although Haun and Williams have denied the allegations in the third party complaint, even if such allegations were true, the Pughs would have a cause of action against Haun and Williams, at best, for *negligence* in (a) (1) developing a misleading listing for the Property; (2) declining a survey of the Property showing the extent of the encroachment and ; (3) providing bad advice.  It is difficult to see how the Pughs would have a cause of action against Haun and Williams for fraud and misrepresentation with respect to the Property's encroachment when the Pughs,  prior to putting the Property up for sale, were in possession of a survey that revealed the true extent of that encroachment.

7.      To determine which statute of limitations should apply, Indiana courts look to the nature

7

of the damages claimed by the plaintiffs, for "it is the nature or substance of the action, rather than its form, that will determine the applicability of the statute of limitations." *Klineman, Rose and Wolf, P.C. v. North American Lab. Co.,* 656 N.E.2d 1206, 1207 (Ind. Ct. App. 1995)

8.      In cases in which professional negligence is determined to be the nature of the suit, Indiana courts have applied the two-year statute of limitations applicable to damages to personal property. *See* Indiana Code Section 34-11-2-4 (providing a two-year limitation for "[a]n injury to…personal property."); *Craig v. ERA Mark Five Realtors,* 509 N.E.2d 1144 (Ind. Ct. App. 1987) (holding Ind. Code 34-11-2-4 applies when action is based on realtor's negligence).

9.      The nature and substance of the Pughs' Complaint is for professional negligence such that the two-year statute of limitations applies.

10.     With legal malpractice cases, courts disallow several actions which are nominally different yet substantively the same, and apply the two-year statute of limitations to all counts "of the same ilk." *Keystone Distribution Park v. Kennerk, Dumas, Burke, Backs, Long, and Salin,* 461 N.E.2d 749 (Ind. Ct. App. 1984). This is similarly applicable to real estate negligence cases.

11.     Furthermore, the Pughs' cause of action accrued and the statute of limitations began to run when they entered into the Listing Contract on January 20, 2005, or, at the latest, when they closed on the sale of their property on July 22, 2005.

12.     A cause of action accrues and the statute of limitations begins to run when the plaintiff knew, or in the exercise of ordinary diligence could have discovered, that an injury had

been sustained as the result of the tortious act of another. *Coffman v. Rohrman,* 811 N.E.2d 868, 871 (Ind. Ct. App. 2004)

13.    Although the extent of damages was unknown within the statute of limitations, the full extent of damages need not be known to give rise to a cause of action. *Filip v. Block,* 879 N.E.2d 1076 (Ind. 2008). In *Filip*, an insured who purchased commercial property instructed an insurance agent to provide the same coverage as had been carried by the previous owners. Although the insureds also lived in a unit of the commercial property, the policy did not cover nonbusiness personal property even though, according to the insureds, they were told by the agent that the property would be covered. When a fire destroyed the property, the insureds suffered a loss since most of the property that was damaged was personal and therefore uninsured. They sued the insurance agent and the insurance agency that issued the policy. The insureds argued that their negligence claim did not accrue until the fire occurred. The Supreme Court of Indiana disagreed:

> ...Clearly a cause of action filed prior to a loss is not ripe. But insurance is about the shifting of risk. The [insureds] bore the risk of loss from the date the policy was issued, so their injury from the alleged negligence occurred at this point. Although the extent of damages was unknown within the statute of limitations, the full extent of damages need not be known to give rise to a cause of action. *Shideler v. Dwyer*, 275 Ind. 270, 282, 417 N.E. 2d 281, 2889 (1981). ("For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of damages be known or ascertainable but only that damage has occurred"). Presumably, no litigation would have been necessary to correct their policy and pay the adjusted premium for the desired coverage before the fire, but if for any reason the coverage was no longer available the [insureds] could have asserted their negligence claim if they felt that necessary. Further, if we accept the [insureds'] argument, then insureds become free riders, paying lower premiums, perhaps for many years, and then retaining the ability to claim the benefit of higher coverage if a loss is incurred.

*Id*. at 1083-84.

9

14.    As *Filip* holds, a cause of action arises when the party knows or should have known about

*potential* -- not actual -- damage.  Here, there certainly were signs that Rodney Pugh

knew or should have known of the potential damage caused by the encroachment as early

as March, 2004.  First, Rodney obtained a March 8, 2004 survey detailing the boundaries

of the Property and the extent of the encroachment.  Second, and later that month on

March 26th, Rodney accepted $5,000 from Virginia Walden and in return released all

claims against her, including claims arising from improvements that were thought to be

part of the Property but were not.  Rodney knew or should have known at this point that,

there would have been no reason for Walden to pay him $5000 and for him to execute a

release of his claims against her unless there was potential damage from the sale of the

Property to him.

15.    Even if the statute of limitations did not start to run as early as March, 2004, the Pughs'

third party claims are still time-barred because the statute of limitations began to run

between January 20, 2005, when the Pughs entered the Listing Contract with Haun, and

July 22, 2005, when the sale to Bartlett closed and the relationship described by the

Listing Contract terminated.

16.    The Pughs could have determined at the time they read their Disclosure Form and any

time before the sale of the Property closed that it was not accurate.  If the inaccuracy was

the result of Haun's negligence, they could have brought it to her attention and corrected

it at that time.  There may have been conjecture as to who told who what....what Connie

Pugh told Haun, what Haun told  Bartlett, what Haun told the Pughs.  But there is no

conjecture as to what the Disclosure Statement and Listing Profile Sheet provided, both

of which failed to acknowledge that the barn encroached upon the neighboring parcel. The Pughs' fate was sealed with respect to their knowledge of this discrepancy when the closing of the Property occurred on July 22, 2005.

17. Thus, at the latest, the statute of limitations began to run on July 22, 2005, when the sale of the Property closed and the relationship between Haun and the Pughs described by the Listing Contract terminated. *see Biomet v. Barnes & Thornburg,* 791 N.E.2d 760 (Ind. Ct. App. 2003).

18. The October 23, 2007 filing of the Pughs' Third-Party Complaint occurred more than two years after hiring Haun as their agent and more than two years after the closing in July, 2005. and therefore the claims contained therein are barred by the expiration of the statute of limitations. Accordingly, there is no genuine issue of material fact and Haun and Williams are entitled to summary judgment as a matter of law.

### *Pughs' Release*

19. Although the Court has concluded that Haun and Williams are entitled to summary judgment based on the expiration of the applicable statute of limitations, the Court in the alternative concludes that the Pughs released any claims they may have had against Haun and Williams.

20. Under Indiana law, real estate contracts, as with any other contract, are interpreted using well-settled principles of contract interpretation. *Rogier v. American Testing and Engineering Corp.,* 734 N.E.2d 606, 616 (Ind. Ct. App. 2000); *see also Ashbaugh v. Horvath*, 859 N.E.2d 1260 (Ind. Ct. App. 2007) (holding that intentions of parties to a real estate listing contract are to be determined from the "four corners" of the document).

21.  Once these documents were signed, they became the responsibility of the Pughs.  *see Jesse v. American Community Mutual Ins. Co.,* 725 N.E.2d 420 (Ind. Ct. App. 2000).

22.  The relationship between the Pughs and their real estate agent is one of principal and agent; the agent acts at the direction of the principal.

23.  The Pughs, in signing and entering into the Listing Contract, Agency Relationships and Authorization Agreement, and Disclosure Form as the signators and principals, assumed responsibility and liability for those representations contained therein, including the matter of the boundary and encroachments, regardless of Haun's actual knowledge, which is in dispute.

24.  The Pughs cannot first enter into the Listing Contract, Real Estate Disclosure Form, and Agency Agreements assuming responsibility for the statements contained therein and releasing Haun from liability and then later sue Haun on those very issues.  Even if the statute of limitations had not run, the Pughs' claims were released by the principals to the agent.

### *Failure to Plead Fraud with Particularity*

25.  Despite the Court's finding that Haun and Williams is entitled to summary judgment, a note must be mentioned with respect to the "fraud" pled in the Third Party Complaint. Even if Paragraphs 15 and 16 of the Pugh's Third-Party Complaint can be understood to state a claim for fraud, the Pughs have not pled or provided the proper evidence to support such a claim.

26.  To state a cause of action for fraud, the plaintiffs must demonstrate that: (1) the defendants made false statements of past or existing material facts; (2) the defendants

made these statements knowing them to be false or while recklessly disregarding their truth or falsity; (3) the defendants made these statements to induce the plaintiffs to act upon them; (4) the plaintiffs did justifiably rely and act upon the statements; and (5) the plaintiffs suffered injury as a result. *McCutchan v. Blanck,* 846 N.E.2d 256 (Ind. Ct. App. 2006). Additionally, fraud must be pleaded with specificity. *AutoXchange.com v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 50-51 (Ind. Ct. App. 2004).

27. The Pughs have failed to allege with specificity the elements necessary to state a claim for fraud. Nowhere in the Third-Party Complaint do the Pughs allege with specificity that Haun made a false statement to the Pughs; that she made a false statement knowing it to be false or with reckless disregard for the truth; that Haun made such a statement to induce the Pughs to act upon it; or that the Pughs justifiably relied on any such statement and thereby suffered injury.

28. Additionally, the Pughs knew more about their property and property lines than Haun, due to the survey they had commissioned in March 2004, and could not have reasonably relied on any alleged statement by Haun regarding the encroachment.

29. The Pughs cannot maintain an action for fraud against Haun for alleged fraudulent statements made by Haun to Bartlett. Haun did not make any statements to Bartlett to induce the Pughs into action. Likewise, the Pughs have not alleged that they actually and justifiably relied on any statements made to Bartlett by Haun. That action, if it existed, would be Bartlett's.

30. To the extent that Paragraphs 15 and 16 of the Pughs' Third Party Complaint state a claim for negligent misrepresentation, no cause of action for negligent misrepresentation exists

in Indiana outside the limited context of employer-employee relationships. *See, e.g.,*
*Darst v. Illinois Farmers Ins. Co.,* 716 N.E.2d 579, 583-84 (Ind. Ct. App. 1999)
Therefore, the Pughs cannot state a claim for negligent misrepresentation because their
cause of action is not recognized in Indiana.

### *Summary Judgment*

31.    There is no genuine issue of material fact that the Pughs' claim was brought outside the
two year statute of limitations and, even had it not been time-barred, said claim had been
released by the Pughs.  Haun and Williams are entitled to judgment as a matter of law.
Summary judgment should be entered for Haun and Williams on the Third-Party
Complaint and on the Counterclaim, and hearing on damages on the Counterclaim should
be held.

# # #

Distribution:
Philip E. Kalamaros , Attorney for Haun and Williams, Third Party Defendants
Donald Thompson, Attorney for Connie and Rodney Pugh, Defendants and Third Party Plaintiffs
Mark E. Watson, Attorney for Richard Bartlett, Plaintiff
Nancy J. Gargula, United States Trustee